# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SKAMANIA COUNTY, a political subdivision of the State of Washington, | No. 55075-0-II |
| Respondent/Cross Appellant, | |
| v. | |
| MITCHELL DEAN PATTON and STACI LEE PATTON, a married couple, | UNPUBLISHED OPINION |
| Appellants/Cross Respondents. | |

CRUSER, J. – Mitchell Patton dug two holes in a road approach leading up to Canyon Creek Road, a county road in Skamania County. Skamania County asked Patton to repair the damage, believing that it owned a right-of-way to the southwest of Canyon Creek Road where the road approach was located. Mr. Patton refused to fill in the holes because he believed that he dug the holes on his own land and that the County did not have any property interest in the land southwest of Canyon Creek Road. The County filled in the holes and filed suit against Mitchell and Staci Patton (Patton). The County alleged that Mr. Patton had created a nuisance when he dug the holes and requested that Patton pay for the repairs to the land. Patton cross-claimed, asserting quiet title, inverse condemnation, and due process claims.

The County moved for summary judgment on its nuisance claim, relying on a 1916 deed in which the previous owners of Patton's land conveyed the disputed land to the County for a road.

Patton argued that the 1916 deed contained a reverter clause that had already been triggered prior to the events set forth above, and as such the County no longer owned the property when Mr. Patton dug the holes.

The trial court concluded that the County owned the disputed land that was southwest of Canyon Creek Road where the holes were dug, determining the parties did not intend the land granted in the 1916 deed to revert to the previous owners. Despite concluding the County owned the disputed land, the court denied the County's motion for summary judgment because it concluded the County's nuisance claim failed.

The County amended its complaint to include intentional trespass, statutory trespass, and negligent trespass claims. The County then moved for summary judgment on all its claims and Patton's counterclaims. The court granted summary judgment in favor of the County on each of its claims as well as on Patton's counterclaims.

Patton appeals the two summary judgment orders. Patton argues that the trial court erred when it (1) concluded the 1916 deed did not contain a reverter clause, (2) dismissed the due process claim, (3) found in favor of the County on all three trespass claims, and (4) did not deny the County's second motion for summary judgment as untimely.

We hold that (1) the 1916 deed conveyed the disputed land to the County in fee simple absolute, (2) Patton's due process claim is without merit, (3) the County proved all three of its trespass claims, and (4) the trial court did not err when it determined that the County's second

motion for summary judgment was timely.[1] We also hold that the County is entitled to attorney

fees on its statutory trespass claim as allowed under RCW 4.24.630(1) and on the due process

claim because the Patton's appeal of the due process claim was frivolous. Accordingly, we affirm

the trial court and award attorney fees to the County in accordance with this opinion.

FACTS

I. 1916 TO 2014

In 1916, Phillip and Alyce Buslach signed a "Waiver of Claim for Damages and Consent

to Locate Road." Clerk's Papers (CP) at 664. In that document, the Buslachs:

> consent[ed] that . . . road [State Road No. 8] be established as described in the petition herein and as examined and surveyed, and forever relinquish to Skamania County, Washington, a Right-of-Way Sixty feet in width over and across . . . [Patton's Parcel].[2] Said Right of Way [sic] hereby sought to be secured as surveyed[,] shown and indicated by the Records of said Road in the office of the Engineer in and for said county. *It is agreed by Skamania County that all the present Road lying and being outside of the lines of the present highway shall revert to the present owners of the land. . . .*
> 　　Giving and granting unto said Skamania County, Washington, the said, Right-of-Way, with full power and authority to examine, survey, lay out and establish said Road as proposed, and to perpetually maintain the same as a County Road.

*Id.* (emphasis added).

---

[1] The County also cross appealed, arguing that the court erred when it dismissed the County's nuisance claim. However, the County later conceded that the nuisance claim would be moot if this court affirmed the trial court's rulings on its trespass claims. We accept the County's concession and do not review the nuisance claim because we affirm the trial court's rulings on the trespass claims.

[2] For clarity, instead of using the legal description, "S.W. 1/4 of the S.W. 1/4 of Section Four (4), Township One (1) North, Range Five (5) East, W.M." for the parcel that was eventually transferred to Mr. Patton, we will refer to this parcel of land as Patton's Parcel. CP at 664.

In 1937, the State had drawn up construction plans for the road that eventually became Canyon Creek Road. The Buslachs transferred additional land within Patton's Parcel to the State of Washington for the road. The 1937 construction plan shows there was an existing right-of-way located within Patton's Parcel southwest of Canyon Creek Road, where the road approach is now located.

By 1994, the State had built the road that would become Canyon Creek Road and transferred to the County all the rights and interest it had in the real property located on the Patton's Parcel.

## II. UNDERLYING INCIDENT

In 2015, Mr. Patton was displeased that a neighbor was using the road approach located within Patton's Parcel to access Canyon Creek Road. Ms. Patton asked the County to research who had the right to use the road approach. The County informed Ms. Patton over e-mail, in person, and in a letter that the County owned the right-of-way where the road approach was located. The County provided Patton with deeds, surveys, and maps to support the County's conclusion that it owned the right-of-way.

In 2016, Mr. Patton dug two holes, using a backhoe, within the road approach to prevent others from using the road approach and installed " 'no trespassing' " signs. *Id.* at 419. The County asked Patton to repair the damage, claiming that a recent survey demonstrated that the road approach was completely located within the land that was transferred to the County in 1916. Approximately three weeks later the damage had not been repaired, so the County repaired the damage itself. The County requested that Patton reimburse the County for the repairs. Patton refused to pay for the repairs.

### III. PROCEEDINGS BELOW

A. CLAIMS AND COUNTERCLAIMS

The County filed suit against Patton, alleging that Mr. Patton created a nuisance when he dug holes within the road approach and installed " 'No Trespassing' " signs. *Id.* at 4. The County requested that the court permanently enjoin and restrain Patton from damaging or otherwise interfering with the County's right-of-way. The County also asked to be reimbursed for the costs of the repairs to the right-of-way and for a warrant for abatement.

In response, Patton asserted that the County did not have any legal rights to the property where Mr. Patton dug the holes. Patton brought counterclaims of quiet title, inverse condemnation, and due process.

B. CROSS MOTIONS FOR SUMMARY JUDGMENT

The County and Patton filed cross motions for summary judgment on the County's nuisance claim. Patton argued that any interest the County may have had in the disputed land was lost by the time Mr. Patton dug the holes because the 1916 deed contained the following clause: " 'It is agreed by Skamania County that all the present Road lying and being outside of the lines of the present highway shall revert to the present owners of the land.' " *Id.* at 76. Patton contended that the clause was a reverter clause and that the deed provided for a conditional grant of the land. Patton argued that under the reverter clause, the County lost its interest in the land when the land granted in the deed was not used for a highway. According to Patton, because the land southwest of Canyon Creek Road, including the road approach, was not within the lines for Canyon Creek Road, it was not being used for a highway, therefore, ownership of the land southwest of Canyon Creek Road belonged to the owner of Patton's Parcel, Mr. Patton.

The County argued that the Buslachs, prior to 1916, conveyed a separate tract of land to the County in fee simple absolute for an earlier road. Then, in 1916, the Buslachs conveyed additional land for State Road No. 8, also in fee simple absolute. The County maintained that the " 'shall revert' " language in the 1916 deed was not a conditional grant or a reverter clause. *Id.* at 748. Rather, it was a promise by the County to give back to the Buslachs the land the Buslachs granted to the County prior to 1916, if the County did not need that land for State Road No. 8.

The trial court determined that the County owned the right-of-way, explaining:

> In reading the 1916 deed and reverter clause as a whole, it is clear that the parties intended that the purpose was to release Skamania's interest in those portions of the "road then in existence" that were outside of the new 60 feet right of way granted for the creation of State Road No. 8.

*Id.* at 255.

The court concluded that any of the land designated for State Road No. 8 was not the land the 1916 deed referenced as reverting to the property owners. The court explained that Patton's reading of the "reverter clause" conflicted with the document as a whole because the 1916 deed transferred a 60-foot-wide right-of-way to the County. *Id.*

Despite determining that the County owned the right-of-way, the court concluded that the County could not bring a nuisance claim because the County had already abated the nuisance. The court denied the County's motion for summary judgment.

C. THE COUNTY'S AMENDED COMPLAINT

The County moved to amend its complaint, which the court granted, to include claims of intentional trespass, statutory trespass, and negligent trespass. The County then moved for summary judgment on its three trespass claims and Patton's counterclaims.

The court found in favor of the County on all three trespass claims, and it dismissed all of Patton's counterclaims. The court explained that it dismissed Patton's due process claim because it had concluded the land in dispute was the County's land and Patton could not identify an underlying property right requiring the County to advise Patton prior to completing work on land that is merely adjacent to Patton's property.

After a bench trial on damages, the trial court found that each of the 2 holes that Mr. Patton dug were 18 inches by 23 inches by 9 inches and the total cost of restoration was $801.20. The trial court also awarded treble damages because the County prevailed on its statutory trespass claim under RCW 4.24.630.

Patton appeals.

## STANDARD OF REVIEW

An appellate court reviews de novo a trial court's grant or denial of summary judgment. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). An appellate court conducts the same inquiry as the trial court and will affirm the trial court's order of summary judgment if there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Price v. Gonzalez*, 4 Wn. App. 2d 67, 72, 419 P.3d 858 (2018); CR 56(c).

There is a genuine issue of material fact if reasonable minds can differ on a fact that controls the outcome of the litigation. *Ranger Ins. Co.*, 164 Wn.2d at 552. The party that moves for summary judgment has the initial burden of demonstrating there are no genuine issues of material fact. *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 381, 46 P.3d 789 (2002). However, if "reasonable minds could reach but one conclusion from the

admissible facts in evidence, summary judgment should be granted." *Visser v. Craig*, 139 Wn. App. 152, 158, 159 P.3d 453 (2007).

## DISCUSSION

### I. OWNERSHIP OF THE DISPUTED LAND

Patton argues that the trial court erred in interpreting the 1916 deed. According to Patton, the trial court interpreted the 1916 deed as having two conveyances of land, (1) land from the Buslachs to the County and (2) land from the County to the Buslachs. Patton contends that because the 1916 deed did not identify the specific land that the County was giving to the Buslachs, the second conveyance violated the statute of frauds, making the trial court's interpretation unreasonable.

We conclude that the County is entitled to summary judgment on ownership of the disputed land because reasonable minds cannot differ as to the intent of the 1916 deed.

### A. LEGAL PRINCIPLES

The interpretation of a deed is a mixed question of law and fact. *Pelly v. Panasyuk*, 2 Wn. App. 2d 848, 864, 413 P.3d 619 (2018). " '[I]t is a factual question to determine the intent of the parties with the court then apply[ing] the rules of law to determine the legal consequences of that intent.' " *Rinehold v. Renne*, 198 Wn.2d 81, 92, 492 P.3d 154 (2021) (alteration in original) (internal quotation marks omitted) (quoting *Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374-75, 113 P.3d 463 (2005)).

Generally, a reviewing court determines the parties' intent "from the language of the deed as a whole." *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 64, 277 P.3d 18 (2012). "[T]he language of the written instrument is the best evidence of the

intent of the original parties to a deed." *Id.* at 65. The focus is on the objective manifestation of the agreement, rather than unexpressed subjective intent. *Pelly*, 2 Wn. App. 2d at 865. Interpretations that give lawful effect to every provision are favored over interpretations that render language meaningless or ineffective. *Id.*

"It is the almost universal rule that, in order to make an estate conditional, the words used in the deed must clearly indicate such an intent, either by express terms or by necessary implication from the language used." *King County v. Hanson Inv. Co.*, 34 Wn.2d 112, 119, 208 P.2d 113 (1949). Washington courts do not favor conditional estates; if the language in the conveyance is unclear that a conditional estate was what the parties intended, courts will generally construe a fee simple absolute. *Niemann*, 154 Wn.2d at 373 n.6.

B. ANALYSIS

As an initial matter, we are unpersuaded by Patton's argument that the trial court interpreted the 1916 deed as containing two conveyances. The trial court determined that the land referenced in the disputed clause was not in the 60-foot-wide strip of land that the Buslachs were granting the County; rather, the disputed clause referenced land that the County already owned. The court determined that the language just denoted an intention of the parties that the County would release any interest they had in other land back to the Buslachs; in other words, it was a promise by the County to convey back to the Buslachs the land that the Buslachs had previously granted if that land was not used for State Road No. 8. Patton's argument that the court's ruling requires that the 1916 deed be read as containing a conveyance by the County to the Buslachs is unpersuasive. Rather, the court merely interpreted the deed as containing a fee simple absolute

conveyance and that the deed also include a promise by the County to convey land to the Buslachs in the future if the land was not used.

In addition, we are unpersuaded by Patton's argument that the only reasonable interpretation is that 1916 deed was a conditional grant of land and the disputed clause is a reverter clause. Washington courts do not favor conditional estates. *Niemann*, 154 Wn.2d at 373 n.6. If the language in the conveyance is unclear as to whether a conditional estate was intended, then we will generally construe a fee simple absolute. *Id.* Here, it is not clear that the original parties intended the 1916 deed to be a conditional conveyance, nor is it clear what the condition would be, when the condition would be met, or who would receive the land if the condition was met.

Accordingly, the only remaining interpretation is the trial court's interpretation that the 1916 deed was fee simple absolute and the language referenced in the disputed clause was referencing land that the County already owned and might later convey to the Buslachs. *Id.*

We conclude that reasonable minds can reach but one conclusion that parties intended that the 1916 deed convey the land to the County in fee simple absolute and that the land referenced in the disputed clause was land that the County already owned in 1916.[3]

---

[3] In Patton's opening brief, Patton makes a passing reference to the 1916 deed not containing enough information to locate the right-of-way that was granted in 1916. To the extent that Patton is arguing that that the description of the land must be included in the 1916 deed, the claim fails. Multiple documents can contain the necessary terms for a land conveyance, and the 1916 deed explains that the description of the land that was conveyed was at the "office of the Engineer." CP at 664; *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995). To the extent Patton is challenging the trial court's conclusion that the 1916 deed conveyed the land southwest of Canyon Creek Road, we decline to consider this argument because Patton failed to assign error or support such a position with argument and citation to authority. RAP 10.3(a)(4), (6).

## II. DUE PROCESS

Patton argues that the County violated Patton's procedural and substantive due process rights by filing and pursuing a nuisance claim, after the County had abated the nuisance.

We hold that the County is entitled to judgment as a matter of law in its favor on Patton's due process claim.

A. LEGAL PRINCIPLES

*1. Due Process*

The Washington State Constitution provides, "No person shall be deprived of life, liberty, or property, without due process of law." CONST. art. I, § 3. Washington's "due process protection against 'the arbitrary exercise of the powers of government' has both procedural and substantive components." *Chong Yim v. City of Seattle*, 194 Wn.2d 682, 688-89, 451 P.3d 694 (2019) (quoting *State v. Cater's Motor Freight Sys., Inc.*, 27 Wn.2d 661, 667, 179 P.2d 496 (1947)).

Under procedural due process, when the state seeks to deprive an individual of a protected interest that individual must receive notice of the deprivation and be provided an opportunity to be heard in order to guard against erroneous deprivation. *State v. Beaver*, 184 Wn.2d 321, 336, 358 P.3d 385 (2015). "We consider the following factors to determine what procedural due process is required: (1) the private interest affected, (2) the risk that the relevant procedures will erroneously deprive a party of that interest, and (3) any countervailing governmental interests involved." *Jespersen v. Clark County*, 199 Wn. App. 568, 586, 399 P.3d 1209 (2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

The substantive component of due process protects against government actions that are arbitrary and capricious even if the decision to take those actions is pursuant to constitutionally adequate procedures. *Chong Yim*, 194 Wn.2d at 688-89.

*2. Nuisance*

A civil action can be filed as a remedy for a public nuisance. RCW 7.48.200. Abating the nuisance "does not prejudice the right of any person to recover damages for its past existence." RCW 7.48.180. If the plaintiff secures a judgment in their favor, the plaintiff may also "have an order allowing a warrant to issue to the sheriff to abate and to deter or prevent the resumption of such nuisance." RCW 7.48.020. "Such motion shall be allowed . . . unless it appear[s] . . . that the nuisance has ceased, or that such remedy is inadequate to abate or prevent the continuance of the nuisance, in which latter case the plaintiff may have the defendant enjoined." RCW 7.48.020.

B. ANALYSIS

Patton argues that chapter 7.48 RCW grants individuals a protected interest in being free from nuisance lawsuits if the nuisance has already ceased. We disagree.

As an initial matter, we note that Patton's attempt to confine the County's nuisance claim to an abatement claim is not well taken. A complaint only needs to set forth "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." CR 8(a). Complaints "are to be liberally construed; their purpose is to facilitate [a] proper decision on the merits, not to erect formal and burdensome impediments to the litigation process." *State v. Adams*, 107 Wn.2d 611, 620, 732 P.2d 149 (1987). Although the County's complaint could be clearer, when read as a whole, it is clear that the County's suit was not limited to merely obtaining a warrant of abatement;

instead, four different types of relief were sought by the County. Additionally, it is clear that the County was not seeking abatement because it clearly stated in the complaint that it had already abated the nuisance.

Although Patton is correct that for a plaintiff to obtain a *warrant of abatement*,[4] the nuisance needs to be ongoing and there needs to be a hearing, RCW 7.48.180 plainly states that "[t]he abatement of a nuisance does not prejudice the right of any person to recover damages for its past existence."[5] Patton's contention that RCW 7.48.020 guarantees a right to be free from a nuisance suit after the nuisance was abated is unsupported.

Patton also contends that the County's action of bringing a nuisance claim when the nuisance has been abated deprived Patton of any possible defense and allows the government to sanction a citizen "based upon rumor and anecdote, because any proof of the violation was obscured by the County." Br. of Appellant at 27. Again, we disagree.

Even though the nuisance was abated, Patton was nevertheless able to submit photos and declarations by individuals who had firsthand knowledge. Additionally, we note that Patton's defense regarding the size of the holes was successful; the trial court found that the holes were the size that Mr. Patton testified to. Furthermore, Patton, as the defendant, is not required to bring any evidence. To the extent Patton complains that the abatement of the nuisance "obscured" the

---

[4] *See* RCW 7.48.020.

[5] Patton relies on *Twitchell v. Kerrigan*, 175 Wn. App. 454, 306 P.3d 1025 (2013) to argue the County could not bring a nuisance suit after a nuisance was abated, but this reliance is misplaced. *Twitchell* neither states nor implies either that a nuisance claim fails, or that a nuisance suit should not have been filed, once the nuisance has been abated.

County's proof of the violation, Patton would then easily prevail on the nuisance claim because the County, as the plaintiff, would lack the proof necessary to meet its burden.[6]

Patton also cites to *Gnecchi v. State*, 58 Wn.2d 467, 364 P.2d 225 (1961). But *Gnecchi* lends no support to Patton's argument and it is unclear why Patton believes *Gnecchi* is relevant to this case. In *Gnecchi*, the plaintiff challenged the government's authority to suspend his license without a hearing. *Id.* at 468-69. *Gnecchi* concluded that even though the plaintiff did not have a hearing prior to the suspension, he had a hearing at the superior court, before the suspension became final; therefore, the plaintiff's due process rights were satisfied even though the hearing was after the original suspension. *Id.* at 470-71. Here, Patton, like Gnecchi, was provided multiple opportunities to be heard.[7]

We hold that the County is entitled to judgment as a matter of law on Patton's due process claim.[8]

---

[6] Patton also argues that the County acted without lawful authority when it repaired the holes that Mr. Patton made because it did not obtain a survey, a resolution, and the necessary maps, plan, and specifications from a road engineer as required by RCW 36.75.050. Even assuming the Patton is correct that the County exceeded its authority, Patton fails to explain why that is legally significant in this case.

[7] We note that Patton's brief is particularly unclear on this point. To the extent that Patton argues that *Gnechhi* requires Patton to have been heard prior to the County filing its nuisance suit or filling in the holes, Patton fails to identify any relevant language or principle in *Gnecchi* that would support such an assertion.

[8] Patton also argues that the trial court erred in denying Patton's motion for attorney fees and costs under 42 U.S.C. § 1988. Because Patton did not prevail on the due process claim, Patton does not qualify for fees under 42 U.S.C. § 1988. Accordingly, we affirm the trial court's decision to deny Patton attorney fees and costs.

III. TRESPASS

Patton argues that the County's three trespassing claims fail because Mr. Patton did not intentionally harm another person's land, the damage to the land was insubstantial, and Mr. Patton did not breach a duty as is necessary for a negligent trespass claim.

We conclude that the County is entitled to judgment as a matter of law on its intentional, statutory, and negligent trespass claims.

A. INTENTIONAL TRESPASS

*1. Legal Principles*

To establish intentional trespass, the plaintiff must prove " '(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages.' " *Ofuasia v. Smurr*, 198 Wn. App. 133, 149, 392 P.3d 1148 (2017) (internal quotation marks omitted) (quoting *Grundy v. Brack Family Tr.*, 151 Wn. App. 557, 567, 213 P.3d 619 (2009)). Intent " 'denote[s] that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.' " *Bradley v. Am. Smelting & Ref. Co.*, 104 Wn.2d 677, 682, 709 P.2d 782 (1985) (quoting RESTATEMENT (SECOND) OF TORTS § 8A (AM. LAW INST. 1965)).

"One who intentionally enters land in the possession of another is subject to liability to the possessor of the land as a trespasser, although he acts under a mistaken belief of law or fact, however reasonable." RESTATEMENT (SECOND) OF TORTS § 164 (AM. LAW INST. 1965).

15

*2. Intent*

Patton argues that he did not intend to invade the County's land; therefore, he did not commit intentional trespass. We disagree.

Whether Mr. Patton intended to go on to another person's land or he honestly believed that he owned the land is not relevant to an intentional trespass claim. Intentional trespass requires proof of " '(1) an invasion of property affecting an interest in exclusive possession [and] (2) an intentional act.' " *Ofuasia*, 198 Wn. App. at 149 (quoting *Grundy*, 151 Wn. App. at 567). It is well recognized that "a trespass 'can be committed despite the actor's mistaken belief that she has a legal right to enter the property.' " *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 646, 135 S. Ct. 1920, 191 L. Ed. 2d 883 (2015) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573, 583, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010)) (citing RESTATEMENT (SECOND) OF TORTS § 164, and cmt. e (AM. LAW INST. 1965)). Washington case law further explains that the intent element concerns whether " 'the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.' " *Bradley*, 104 Wn.2d at 682 (quoting RESTATEMENT (SECOND) OF TORTS § 8A (AM. LAW INST. 1965)).[9] Patton's claim fails.

Here, the evidence demonstrates that Mr. Patton entered onto and dug holes in the right-of-way using a backhoe to prevent others from using it. *Id.* Therefore, we hold that the County proved the intent element of its intentional trespass claim.

---

[9] Patton also argues Patton cannot be held liable for intentional trespass because ownership could not be determined prior to judgment. However, Patton fails to cite any authority to support this proposition.

*3. Actual and Substantial Damage*

Patton argues that he did not cause actual and substantial damage when he dug two "small ditches" and erected two " 'no trespassing' " signs. Br. of Appellant at 41. We disagree.

Patton cites to several cases in support of his position, none of which are persuasive. For example, Patton relies on *Stewart v. Hoffman*, 64 Wn.2d 37, 43, 390 P.2d 553 (1964), but it is not clear that *Stewart* involved an appeal of a trespass claim. Rather, it was an appeal from a judgment that fixed boundaries and quieted title to a tract of land. *Id.* at 37. Moreover, nothing in *Stewart* can be construed as setting a minimum amount of damage that must be shown to establish substantial damages in an intentional trespass case.

Patton also relies on *Wallace v. Lewis County*, 134 Wn. App. 1, 17, 137 P.3d 101 (2006), but that case dealt with whether the depreciation of a property's value satisfies the actual and substantial damage element of a continuing intentional trespass, or whether such depreciation is only relevant in a claim of *permanent* trespass. This court held that value depreciation is only relevant in permanent trespass claims. *Id. Wallace* does not aid Patton's argument.

*Bradley*, 104 Wn.2d at 679, which dealt with an intrusion of microscopic, airborne particles, and *Grundy*, 151 Wn. App. at 568, which dealt with " 'minor water intrusion,' " " 'occasional debris,' " and " 'yellowed and dead grass,' " are factually distinguishable in that they involved damage that in no way compares to the raw removal of land by a backhoe that occurred here.

As the *Bradley* court explained when discussing the intrusion of airborne particles, such particles are "transitory or quickly dissipate" and do not interfere with an owner's possessory right; the proper cause of action is nuisance. 104 Wn.2d at 691. However, when the substance

17

accumulates and does not pass away, then a trespass has occurred. *Id.* The court noted though that without some sort of actual and substantial damage requirement "every landowner within a hundred miles of a manufacturing plant" could sue a factory owner for trespass. *Id.* at 692. If such suits were allowed, then manufacturers would be harassed with lawsuits that did not serve any useful purpose. *Id.* To prevent these potential useless lawsuits, Washington adopted the actual and substantial damage element. *Id.*

Patton also relies on a Black's Law Dictionary definition of substantial damages that states that " 'substantial damages' " are " '[c]onsiderable in amount and intended as [a real] compensation for a real injury.' " Br. of Appellant at 42 (quoting *Black's Law Dictionary* 392 (6th ed. 1990)). But Patton does not explain how this definition defeats the conclusion that he caused either substantial or "considerable" damage when he utilized a backhoe to dig two deep holes in the right-of-way.

Here, the damage Mr. Patton inflicted on the land was sufficient to meet the trespass element of actual and substantial damage. The injury to the land caused over $800 in damages. A piece of heavy equipment, a backhoe, was used both to inflict the damage and to repair it. Mr. Patton testified that the purpose of the holes was to prevent others from using the road, and he succeeded in damaging the land to the point that vehicles could not pass over the right-of-way. The damage Mr. Patton caused to the County's right-of-way was actual and substantial.

The County is entitled to judgment as a matter of law on its intentional trespass claim.

B. STATUTORY TRESPASS

Patton argues that because he did not intentionally trespass and did not have reason to know that he was trespassing, he could not have acted "wrongfully," as required for statutory trespass under RCW 4.24.630.

We conclude that Mr. Patton acted wrongfully because he had reason to know that he lacked authorization to dig the holes.

*1. Legal Principles*

RCW 4.24.630 provides that when a person "goes onto the land of another and . . . wrongfully causes waste or injury to the land" that person is "liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury." "[A] person acts 'wrongfully' if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act." RCW 4.24.630.

*2. Analysis*

The record does not support Patton's claim that he did not have reason to know that he lacked authorization to dig the holes. In 2015, the County had been corresponding with Patton regarding the road approach. A County representative and Ms. Patton corresponded over e-mail and met in person to discuss ownership of the road approach; the representative also sent a formal letter to Ms. Patton. In that correspondence, the County maintained that it owned the right-of-way. The County representative signed a declaration asserting that he provided Ms. Patton deeds, surveys, and maps that, in the County's view, demonstrated that the County owned the land on which the holes were dug. The record also indicates that, in 2015, Patton was aware that the County

had previously performed work on the right-of-way in 2005. Mr. Patton had reason to know that he lacked the authorization to dig holes in the road approach.

The County is entitled to judgment as a matter of law on its statutory trespass claim.

C. NEGLIGENT TRESPASS

Patton argues that he had no duty to investigate ownership beyond the assessor's records, a professional survey, and WSDOT maps.

The County, however, has not taken the position that a duty to investigate is an element of negligent trespass and readily acknowledges that it is not. Rather, the County contends that it need only show that the Pattons failed to exercise "reasonable care not to damage the County right of way" and "not to obstruct public rights of way." Br. of Resp't at 30. We agree with the County.

*1. Legal Principles*

Negligent trespass occurs when a person, acting with negligence, intrudes into or onto the property of another. *Hurley v. Port Blakely Tree Farms L.P.*, 182 Wn. App. 753, 771-72, 332 P.3d 469 (2014). The elements of negligence are: (1) duty, (2) breach, (3) injury, and (4) proximate cause. *Id.* at 771. In negligence actions, "[A]n individual[ ] is held to a general duty of care, that of a 'reasonable person under the circumstances.' " *Keller v. City of Spokane*, 146 Wn.2d 237, 243, 44 P.3d 845 (2002) (quoting DAN B. DOBBS, THE LAW OF TORTS § 228, at 580 (2000)).

*2. Analysis*

The exact nature of Patton's argument on this point is unclear. To the extent Patton argues that he had only a duty to investigate, and that he did not breach that duty, a duty to investigate is not an element of negligent trespass. The County needed to show only that Mr. Patton breached a general duty of care that would be exercised by a reasonable person under the circumstances. *Id.*

To the extent Patton argues that he exercised the ordinary care that a reasonable person would exercise because he conducted an investigation that went beyond what he was required to do, we are unpersuaded. Mr. Patton breached his duty of care when he dug holes in the right-of-way to a County road that, based on deeds, surveys, maps, and the fact that the County previously worked on the road, he had reason to know belonged to the County. *Id.* These holes damaged the road approach and the County was forced to repair that land at a cost of over $800.

Accordingly, we conclude that the County is entitled to judgment as a matter of law on its negligent trespass claim.

### IV. SECOND MOTION FOR SUMMARY JUDGMENT

Patton argues that the County's second motion for summary judgment should have been denied as untimely because the County's motion, functionally, was a motion for reconsideration. This is so, Patton claims, because the trial court had previously ruled on claims of trespass and due process. We disagree.

### A. THE TRESPASS CLAIMS

Contrary to Patton's contention, the trial court had not previously considered any trespass claims. Although the County briefly *mentioned* trespass in a previous motion for reconsideration, there is nothing in the record indicating that the trial court ruled on the merits of any trespass claims prior to the County amending its complaint. Therefore, the trial court did not err in considering the County's second motion for summary judgment.[10]

---

[10] We note that on appeal, Patton does not challenge the addition of the trespass claims brought in the amended complaint. If the trial court properly allowed the County to amend its complaint, it would make little sense for us to conclude that the trial court was not permitted to entertain the County's motion for summary judgment on the trespass claims brought in its amended complaint.

B. THE DUE PROCESS CLAIM

Likewise, Patton's assertion that the trial court had previously ruled on the due process claim is incorrect. The trial court clearly stated in multiple hearings prior to the County's second summary judgment motion that it had not ruled on the Patton's due process claim, and it is clear from the record that the trial court's use of the term "due process" related solely to the County's nuisance claim.

The trial court did not err in considering the County's second motion for summary judgment because nothing in the County's motion asked the trial court to reconsider rulings the trial court previously made.

V. ATTORNEY FEES ON APPEAL

The County asks for attorney fees on appeal on its statutory trespass claim under RCW 4.24.630(1), and on Patton's unsuccessful due process claim under 42 U.S.C. § 1983.

Because the County prevailed on its statutory trespass claim we award the County attorney fees on that claim, and because Patton's due process appeal was groundless and unreasonable, we award the County attorney fees on that claim as well.

A. LEGAL PRINCIPLES

Under RAP 18.1(a), a party may request attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review."

RCW 4.24.630(1) provides that an individual who commits statutory trespass "is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs."

When the defendant is the prevailing party in a 42 U.S.C. § 1983 claim, "the court may, in its discretion, award fees based upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Wash. St. Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 289, 4 P.3d 808 (2000).[11] A frivolous action is one that "cannot be supported by any rational argument on the law or facts." *Orwick v. Fox*, 65 Wn. App. 71, 90, 828 P.2d 12 (1992). "[T]he presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed." *Fox v. Vice*, 563 U.S. 826, 834, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011).

B. ANALYSIS

*1. Statutory Trespass Fees*

Because the County prevails on its appeal of its statutory trespass claim, it is entitled to attorney fees under RCW 4.24.630(1). We award the County fees on this claim.

*2. 42 U.S.C. § 1983 Fees*

The County argues that it is entitled to attorney fees under 42 U.S.C. § 1988 because Patton should have known the § 1983 due process claim was frivolous after the trial court declared that

---

[11] The statutory authority for attorney's fees in a 42 U.S.C. § 1983 claim is 42 U.S.C. § 1988.

the County owned the disputed land. We agree, and hold that the County is entitled to attorney fees on appeal on the due process claim.

A simple reading of chapter 7.48 RCW shows that the County was authorized to bring its nuisance claim. The County alerted Patton to the dispositive statute, RCW 7.48.180, in its motion below. Patton merely ignores RCW 7.48.180, and makes no attempt to show that RCW 7.48.180 is inapplicable or that the County misapprehends it.

Patton's appeal of the due process claim is frivolous, and we therefore grant the County's request for reasonable attorney fees for defending this claim.[12]

CONCLUSION

We conclude that the 1916 deed conveyed the disputed land to the County in fee simple absolute. Additionally, we conclude that Patton's due process claim was without merit and the appeal of the claim was frivolous, the County proved its trespass claims, and the trial court did not err when it allowed the County to file its second motion for summary judgment.

Accordingly, we affirm the trial court and award attorney fees to the County on the statutory trespass claim, and on Patton's due process claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[12] Patton also asks for attorney fees and expenses under RAP 18.1 and the Civil Rights Act. Because Patton does not prevail on any of the issues on appeal, we decline to award Patton any attorney fees.

No. 55075-0-II

CRUSER, J.

We concur:

WORSWICK, P.J.

MAXA, J.

25